IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

CHRISTOPHER WATSON,

Plaintiff,

v.

HORNECKER COWLING, LLP, *an Oregon Limited Liability Partnership*,

Defendant.

Case No. 1:21-cv-01662-CL

**OPINION AND ORDER**

---

CLARKE, Magistrate Judge.

Plaintiff alleges claims against the Defendant, Hornecker Cowling, LLP, a law firm and limited liability partnership, under the Oregon Unfair Debt Collection Practices Act (OUDCPA) and the federal Fair Debt Collection Practices Act (FDCPA). Full consent to magistrate jurisdiction was entered on August 22, 2022 (#38). The case comes before the Court on the Defendant's Motion for Summary Judgment (#59). For the reasons below, the motion should be GRANTED, and judgment should be entered on behalf of the Defendant.

## BACKGROUND

This cause of action arises out of the attempt to collect a debt. The underlying transaction was the purchase of a vehicle; Watson bought the car from Uwe Schroeder, doing business as Schroeder Wholesale on October 31, 2014. The two parties signed a Bill of Sale and Purchase Order itemizing the purchase price, down payment, and 24 monthly payments of $157.87, which included payment of a finance charge and interest at the rate of 30%. The Purchase Order also specifies that "a $25 late fee will be applied if any payments are 10 days or more late," and that "Failure to comply with any of the above could result in repossession." The Bill of Sale specifies that the vehicle would be sold "as is." The Buyer's Guide states, "As Is, no warranty." The signed Purchase Order, Bill of Sale, and Buyer's Guide are submitted as Exhibits 2, 3, and 4 to Defendant's Motion (#59). Plaintiff confirmed that he understood and signed these documents at the time of purchase. Def. MSJ Ex. 15, Plf. Depo. 32-34.

Nevertheless, Watson claims that the vehicle was purchased based upon assurances that the engine had been recently rebuilt. Second Amended Complaint ("SAC") ¶ 69(n). However, after driving approximately 180 miles, the vehicle had engine problems. SAC ¶ 73. Watson returned the vehicle to Schroeder, who told him to take it to the mechanic who had allegedly rebuilt the engine. Watson claims he continued to make payments until Schroeder told him to "hold off" because the repairs were taking such a long time. SAC ¶ 82. After two years, the mechanic said he would not be doing any further work on the vehicle, but he provided Watson with a different engine that he could use as a replacement and install himself. SAC ¶ 83. The vehicle was inoperable when Watson retrieved it from the mechanic in November 2016. SAC ¶ 85. Watson alleges that he and Schroeder's agent, an employee named Sean, discussed whether a balance was

still owed on the purchase of the vehicle, but he claims that Sean never gave him a specific amount that was needed to resolve the account. SAC ¶ 86.

According to an Accounting Ledger that Schroeder used to keep track of Watson's payments, (Def. MSJ Ex. 8), Watson failed to pay the $1,000 down payment when he took possession of the vehicle. Instead, Watson paid $500 on November 7th and $500 on December 6th. *Id.* Watson failed to make the monthly installment payments due on November 30, 2014, and December 30, 2014. Instead, Watson made two payments on January 19, 2015. *Id.* Watson made a total of nine of the twenty-four installment payments in various amounts at various times. *Id.* According to the Second Amended Complaint, Watson agrees that he made a total of nine payments, including the two $500 deposit payments, for a total of $2,220. Watson and Schroeder did not reach any agreement that modified the contractual obligation to pay. SAC ¶ 95. Unknown to Watson, Schroeder added thirty-four late fees to the balance. SAC ¶ 96.

In November of 2020, Watson received a debt collection letter ("the Collection Letter") from Hornecker Cowling, LLP. SAC ¶ 106. The Collection Letter was addressed to Watson and sent by certified mail and regular mail to his employer, the Josephine County Sheriff. SAC ¶ 108. The Collection Letter stated that it was seeking to collect $5,387.80 for the purchase of the vehicle, and that non-payment could result in accruing interest and potential attorney fees for further collection actions. Def. MSJ Ex. 9.

Watson alleges that, after receiving the letter, he called Schroeder directly to discuss the situation. He claims he was told that Schroeder was on vacation in Mexico and would call him back, but he never did. SAC ¶ 114. Watson does not claim that he contacted or attempted to contact anyone at Hornecker Cowling, nor did he ever dispute the amount stated in the Debt Collection Letter.

On July 17, 2021, Hornecker Cowling filed a lawsuit on behalf of Schroeder in Josephine County Circuit Court, Case No. 21CV27462, seeking to collect the same debt for the purchase of the vehicle. Watson alleged an affirmative defense under the statute of limitations, and he also filed the case at bar against Hornecker Cowling, forcing the law firm to withdraw from its representation of its client, Schroeder, and the state court case was ultimately voluntarily dismissed.

Plaintiff Watson now brings claims under the FDCPA and the OUDCPA, alleging that the Debt Collection Letter and the filing of the state court Complaint violated those statutes by attempting to collect un-owed debts and unlawful fees, charges, interest, and attorney fees. Watson alleges that at least 6 of the monthly payments itemized by the defendant were barred by the applicable statute of limitations.

## LEGAL STANDARD

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material of fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). The court cannot weigh the evidence or determine the truth but may only determine whether there is a genuine issue of fact. *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 800 (9th Cir. 2002). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

When a properly supported motion for summary judgment is made, the burden shifts to the opposing party to set forth specific facts showing that there is a genuine issue for trial. Id. at

250. Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts which show there is a genuine issue for trial. *Devereaux*, 263 F.3d at 1076. In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party. *Allen v. City of Los Angeles*, 66 F.3d 1052, 1056 (9th Cir. 1995).

## DISCUSSION

Plaintiff Watson alleges claims arising out of two separate actions by Defendant Hornecker Cowling: (1) the sending of the Debt Collection Letter, and (2) the filing of the Complaint in Josephine County Circuit Court. Plaintiff claims that these two actions violated both the FDCPA and the OUDCPA because both the Letter and the Complaint demanded that Plaintiff pay un-owed debts and disallowed charges and fees, such as finance charges and attorney fees, and because at least 6 of the monthly payments itemized as past-due debts were beyond the statute of limitations.

Defendant Hornecker Cowling now moves for summary judgment on each set of claims. The motion should be granted because the finance charges and interest were authorized by the contract between the parties, and the attorney fees were allowed by statute. Moreover, while Defendant does not deny that the amount demanded was potentially incorrect, Defendant claims that it is entitled to the bona fide error defense because the attorney, Mr. Kellerman, reasonably relied on an amount owed that was provided by his client, and because the Plaintiff did not dispute the amount demanded after receiving the Debt Collection Letter. The Court agrees. Similarly, regardless of the explanation provided as to the vehicle being in good working order, it is undisputed that Plaintiff did owe some amount of the remaining debt and he was no longer making

any payments. Therefore, Plaintiff was in default and Defendant was entitled to foreclose on the collateral, the vehicle.

### 1. Defendant is entitled to summary judgment as to Plaintiff's FDCPA claims.

Congress enacted the FDCPA to protect consumers from improper conduct and illegitimate collection practices. *Clark v. Capital Credit and Collection Services, Inc.*, 460 F.3d 1162, 1169-70 (9th Cir. 2006); *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 939 (9th Cir. 2007.) In passing the FDCPA, Congress sought to encourage the prompt and amicable settlement of debts. *Id.* at 939. This promotes the strong judicial policy favoring settlement of disputes. *Id.* To that end, the FDCPA requires debt collectors to advise debtors of their right to dispute the validity of the debt or any portion thereof. 15 U.S.C. §1692g(a)(3). If the debtor fails to object to the validity of the debt within the 30-day period, the debt collector is allowed to assume the debt is valid. *Id.* The consumer's failure to object to the validity of the debt, however, cannot be used as an admission of liability. 15 U.S.C. §1692g(c).

Plaintiff claims that the Defendant violated the FDCPA in the following ways:

a) Using harassment, oppression, or abuse in the collection of a debt under § 1692d;
b) Using unfair or unconscionable means to collect a debt, including but not limited to the attempt to collect amounts not expressly authorized by the Contract or permitted by law in violation of § 1692f, and 1692f(1);
c) Using false representation or deceptive means to collect a debt, including but not limited to falsely representing the character, amount, or legal status of any debt and by threatening to take action that cannot legally be taken in violation of § 1692e.

For the reasons below, the Defendant is entitled to summary judgment as to all of these claims.

   **a) Plaintiff has not raised a question of material fact regarding whether the Defendant used harassment, oppression, or abuse in the collection of a debt.**

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. 15 U.S.C. §1692d. The statute also states that, without limiting the general application of the foregoing, the following conduct is a violation of this section:

> (1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.
> (2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.
> (3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) [1] of this title.
> (4) The advertisement for sale of any debt to coerce payment of the debt.
> (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.
> (6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

Plaintiff does not identify which, if any, of the subsections of 15 U.S.C. §1692d apply to the Defendant's conduct, nor are the allegations connected to this claim explicitly specified, either in the Second Amended Complaint (#59), or in the Plaintiff's Response (#76). The Defendant speculates that Plaintiff intended to connect this claim to the allegation that Defendant sent the Collection Letter to Watson's employer's address. However, the address of Watson's employer was provided to Schroeder by Watson on the Bill of Sale (MSJ Ex. 3) and the Title to the vehicle (MSJ Ex. 6). Therefore, sending the Collection Letter to that address was a reasonable action. Plaintiff fails to raise a question of fact as to whether this conduct was abusive or unlawful. Defendant is entitled to summary judgment on this issue.

  b) **Plaintiff has not raised a question of material fact regarding whether the Defendant used unfair or unconscionable means to collect a debt.**

The statute, 15 U.S.C. § 1692f, prohibits seeking any interest, fee, or expense unless such amount is expressly authorized by the Contract creating the debt or is permitted by law. Plaintiff Watson claims that the $25 late fees and the thirty percent (30%) interest rate charged by Schroeder, as well as the attorney fees noticed in the Collection Letter, were not authorized by the Contract or permitted by law. The Court disagrees.

First, the $25 late fees were expressly authorized by the Contract creating the debt, specifically, the Purchase Order. MSJ Ex. 2. The Purchase Order stated that "a $25 late fee will be applied if any payments are 10 days or more late." Plaintiff's signature appears on the document, and he stated in deposition that he signed it.

Plaintiff claims that the $25 late fees were not authorized by the Contract because the Purchase Order providing for the fee was a "separate document," and not the Contract itself. Plaintiff asserts that this violates the statute provisions for retail installment contracts. ORS 83.520 states that, "A retail installment contract shall be in writing, and shall contain all the agreements of the parties." Nothing in this provision requires that "all the agreements" be contained in a single document. Therefore, all of the documents that Plaintiff signed at the time of purchase were "all the agreements between the parties," and thus all together, including the Purchase Order, they created the Contract itself.

Plaintiff also asserts that the $25 late fees were excessive because ORS 82.590 states that "the delinquency charge for any installment shall not exceed five percent of the delinquent installment." The installments in this case called for payments of $153.87, which would allow for a delinquency charge of $7.69 per installment. The Court finds that the $25 fees were potentially excessive and disallowed by statute. Nevertheless, they were expressly authorized by the Contract, as required by section 1692f. Therefore, it was not unfair or unconscionable for the Defendant to

Page 8 – OPINION AND ORDER

include them in the Collection Letter and the Complaint. Plaintiff of course could have disputed their inclusion and he could have litigated their ultimate recoverability, but their inclusion was not a violation of the FDCPA.

Second, the Contract creating the debt expressly authorizes the payment of a thirty percent (30%) interest rate in the Bill of Sale. MSJ Ex. 3. Plaintiff's signature appears on the document, and he stated in deposition that he signed it. As with the $25 late fees, it was not unfair or unconscionable for the Defendant to include an interest expressly authorized by the Contract, even if Plaintiff had a meritorious argument for why such interest was not ultimately recoverable.

Third, the Collection Letter sent by Attorney Kellerman stated that "Our client may be entitled to recover attorney fees pursuant to the provisions of ORS 20.080 or otherwise should you fail to pay this liability within the 30-day demand time set forth above." ORS 20.080 provides for reasonable attorney fees to the prevailing party in a small claims contract dispute, as long as written demand for payment of the claim was made on the defendants at least 20 days before the filing of the complaint. The complaint filed by Hornecker Cowling on Schroeder's behalf against Watson was filed at least 20 days after Watson received notice via the Collection Letter, and the amount of the principal and interest demanded was less than $10,000. Plaintiff argues that this was a misrepresentation because ORS 20.082(5) provides that, "The provisions of this section do not apply to:...(b) Contracts for which another statute authorizes or requires an award of attorney fees." Plaintiff notes that the retail installment contract provisions do in fact contain such an authorization: ORS 83.560 states, "In addition to the delinquency charge, the retail installment contract may provide for the payment of reasonable collection costs. The collection costs may include the payment of reasonable attorney fees." The Court does not find this to be a material

Page 9 – OPINION AND ORDER

misrepresentation. Whether they were authorized by ORS 20.080, or ORS 83.560, attorney fees were permissible as part of the reasonable collection costs.

All of the determinations above apply equally to the late fees, interest, and attorney fees included in the state court Complaint, filed by the Defendant after the Plaintiff did not dispute the debt. The Defendant is entitled to summary judgment on these claims.

### c) Plaintiff has not raised a question of material fact regarding whether the Defendant used false, deceptive, or misleading representations concerning the character, amount, or legal status of the debt.

15 U.S.C. §1692e, prohibits a debt collector from using any false, deceptive, or misleading representations concerning the character amount or legal status of any debt. 15 U.S.C. §1692e(2). Whether conduct violates this section "requires an objective analysis that takes into account whether 'the least sophisticated debtor would likely be misled by a communication.'" *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010) citing *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 934 (9th Cir.2007) (internal quotation marks omitted). "In assessing FDCPA liability, we are not concerned with mere technical falsehoods that misled no one, but instead with genuinely misleading statements that may frustrate a consumer's ability to intelligently choose his or her response." *Donohue*, 592 F.3d at 1034.

In this case, there is a question of fact as to whether or not the total amount demanded by the Collection Letter and the state court Complaint was an accurate sum. Plaintiff raises multiple issues with regard to whether all amounts included were actually recoverable. Nevertheless, as discussed above, all of the amounts were expressly authorized by the Contract, therefore the total sum was not "false, deceptive, or misleading," such that Plaintiff's ability to intelligently chose his response was undermined.

Moreover, the Court agrees with the Defendant that Attorney Kellerman was entitled to assume the debt was valid at the time that he filed the state court Complaint. 15 U.S.C. §1692g(a)(3) states, "...unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector." Plaintiff did not dispute the validity of the debt within thirty days after receipt of the Collection Letter. While Plaintiff claims that he called Schroeder to ostensibly dispute the debt, Plaintiff concedes that he did not contact anyone at Hornecker Cowling, LLC, the law firm that sent the Collection Letter to Plaintiff. Therefore, it was reasonable for Attorney Kellerman to assume that the debt was valid and to proceed with further collection attempts.

### d) Communications between attorneys are not actionable under the FDCPA.

As a preliminary matter, the Supreme Court has held that the FDCPA "applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation." *Heintz v. Jenkins*, 514 U.S. 291, 299, 115 S. Ct. 1489, 1493 (1995). The Court reasoned that "the plain language of the [FDCPA] itself says nothing about" an "exemption [for lawyers] in respect to litigation." *Id.* at 297, 115 S.Ct. 1489. Nor did it make sense to differentiate between lawyers acting in the capacity of debt collectors and those litigating: "The line ... between 'legal' activities and 'debt collection' activities was not necessarily apparent to those who debated the legislation, for litigating, at first blush, seems simply one way of collecting a debt." *Id.*

However, the Ninth Circuit has recognized a limited exception to this rule. In *Guerrero*, the Ninth Circuit concluded that communications sent only to a debtor's attorney are not actionable under the FDCPA. *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 935-36 (9th Cir. 2007). The court reasoned that *Heintz* only addressed the question of whether the FDCPA applies to lawyers collecting debts through litigation, but *Heintz* did not address how the identity of the recipient of

the communication impacts FDCPA liability. *Id.* at 937–38. When the recipient of the communication is solely a debtor's attorney, the FDCPA's purpose of protecting unsophisticated consumers is not implicated. *Id.* at 939. Thus, the court concluded that a letter directed "to counsel, and not to his client—'the consumer'—was not a prohibited collection effort." *Id.* at 934.

In this case, Plaintiff's Second Amended Complaint contains allegations that the communications between the parties' attorneys constitute violations of the FDCPA. For the reasons above, any communications directed to Plaintiff's attorney are not actionable under the FDCPA. The Defendant is entitled to summary judgment as to these allegations.

### e) Attorney Kellerman is entitled to the bona fide error defense.

As discussed above, the Defendant is entitled to summary judgment as to the merits of Plaintiff's claims under the FCPA. However, even if this were not the case, the Defendant would be entitled to summary judgment based on the bona fide error defense.

15 U.S.C. §1692k(c) provides that: "A debt collector may not be held liable . . . if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid any such error." "Logically, if a debt collector reasonably relies on the debt reported by the creditor, the debt collector will not be liable for any errors." *Clark v. Cap. Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1177 (9th Cir. 2006). "On the other hand, the bona fide error defense will not shield a debt collector whose reliance on the creditor's representation is unreasonable or who represents to the consumer a debt amount that is different from the creditor's report." *Id.*; *accord Smith v. Transworld Systems, Inc.*, 953 F.2d 1025, 1032 (6th Cir.1992) (finding no violation because the creditor listed incorrectly the amount owed when it referred the debt to the debt collector).

In *Clark*, a Collection Agency ("Agency") sent a collection letter to a Mrs. Clark to collect a medical debt assigned to the Agency by a Medical Clinic ("Clinic"). 460 F.3d 1162. Mrs. Clark disputed the validity of the debt and explained billing problems she had experienced in the past with the Clinic. After receiving this notice, the Agency sent Mrs. Clark a second letter enclosing a copy of an itemized statement it had obtained from the Clinic, to verify the debt. One of the issues was whether the Agency properly verified the debt after Mrs. Clark disputed the debt. The court determined that the Agency properly verified the debt by obtaining and sending the Clinic's itemized statement to Mrs. Clark. The court stated: "At the minimum, 'verification of the debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed.'" *Id.* at 1173-74 (internal citations omitted). "Moreover, the FDCPA did not impose upon them any duty to investigate independently the claims presented by Dr. Evans . . . [the agency's] actions, then, satisfied the requirement that they confirm with their client the particular amount being claimed. *Id.* at 1174 citing *Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1999) (holding that debt collectors do not have to vouch for the validity of the underlying debt.)" *Id.*

This standard that the court discussed in Clark is the minimum standard necessary to verify the debt after a debtor contests the validity of the debt under 15 U.S.C. §1692g. In this case, it is undisputed that the Plaintiff did not ever contact the debt collector, the Defendant, to request that the debt be verified or otherwise dispute the validity of the debt. Therefore, it is not clear that Defendant had any obligation to verify the debt in the matter described in *Clark*. Nevertheless, when the Defendant filed the debt collection lawsuit in Josephine County, he attached a signed declaration from Schroeder to the Complaint, verifying the amount of the debt that Schroeder claimed was owed. Def. MSJ Ex 12. A signed declaration verifying the amount owed, according

to the creditor, satisfies the minimum standard set by *Clark*, unless there is any indication that reliance on the statement and verification by the creditor is unreasonable. No such indication exists in the record of this case. Therefore, the Defendant is entitled to the bona fide error defense, and thus entitled to summary judgment on these claims.

**2. Defendant is entitled to summary judgment as to Plaintiff's state law claims.**

ORS 646.643 provides that if a debt collector is in compliance with the FDCPA, it is in compliance with the UDCPA under Oregon law. Moreover, under state law, as with the FDCPA, a debt collector has no independent obligation to verify the alleged debt before commencing collection activities. *Hulse v. Ocwen Federal Bank, FSB*, 195 F.Supp.2d 1188, 1211 (D. Or 2002.) Instead, as explained above, a debt collector can rely on information provided by the creditor. *Id.* Because the Defendant complied with the FDCPA, the Defendant is entitled to summary judgment as to Plaintiff's UDCPA claim as well.

### ORDER

For the foregoing reasons, the Defendant's Motion for Summary Judgment (#59) is granted. A final judgment in Defendant's favor shall be entered.

DATED this \_\_25\_\_ day of January, 2024.

_____
MARK D. CLARKE
United States Magistrate Judge